```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
UNITED STATES OF AMERICA,            :
                                     :       10 Cr. 96 (DLC)
              -v-                    :
                                     :       OPINION & ORDER
SERGEY ALEYNIKOV,                    :
                  Defendant.         :
                                     :
-------------------------------------X
```

Appearances:

For the United States:

Joseph P. Facciponti
Rebecca A. Rohr
United States Attorney Office
One Saint Andrew's Plaza
New York, NY 10007

For Defendant:

Kevin H. Marino
John D. Tortorella
John A. Boyle
Marino, Tortorella & Boyle P.C.
437 Southern Boulevard
Chatham, NJ 07928

DENISE COTE, District Judge:

On October 25, 2010, the defendant filed a motion in limine to suppress statements he made to agents of the Federal Bureau of Investigation ("FBI") following his arrest on July 3, 2009. The defendant contends that his post-arrest statements were taken in violation of New York Rule of Professional Conduct 4.2(a) ("Rule 4.2(a)").  Defendant's motion to suppress his

post-arrest statements was denied at a final pretrial conference on November 19, 2010, with an Opinion to follow. This is that Opinion.

Background

On Friday, July 3, 2009, at 9:20 p.m., the defendant was arrested at Newark Airport upon his return from a meeting in Chicago with his new employer, Teza Technologies LLC. The defendant was then transported to the FBI office in New York City, where he waived his Miranda rights and agreed to answer questions without an attorney present. The FBI agents began their questioning of the defendant at approximately 10:15 p.m. At 10:34 p.m. that evening, Sabrina Shroff, the Federal Defender on duty for Saturday presentments, attempted to send an email to the Assistant United States Attorney ("AUSA") on duty requesting that any questioning of the defendant cease. This email was rejected by the computer system because it was sent to an incorrect email address. At 11:36 p.m., Ms. Shroff resent her email to the AUSA on duty. Following hours of questioning, the defendant signed a written statement at 1 a.m. on Saturday, July 4. Ms. Shroff's email finally reached the AUSA in charge of the defendant's case, Mr. Facciponti, at 1:29 a.m., only sixteen minutes before the FBI interview with the defendant ended at 1:45 a.m. and forty-five minutes after the defendant signed a

written statement.  Mr. Facciponti responded by email to Ms. Shroff at 2:03 a.m.; he refused her request to stop the questioning of the defendant.

On Saturday, July 4, the defendant was presented before Magistrate Judge Fox.  Judge Fox determined that the defendant did not qualify for appointed counsel, but because the defendant had not yet retained counsel of his own, Judge Fox appointed Ms. Shroff counsel solely for the bail proceeding.  The defendant subsequently retained counsel on May 4, 2010.

## Discussion

The defendant argues that the post-arrest statements made to FBI agents were taken in violation of Rule 4.2(a) because the AUSA refused to stop the questioning after receiving Ms. Shroff's request.  The Government contends that the motion is untimely and without merit.

1.  Timeliness

At an initial pretrial conference on February 17, 2010, the Court set a July 16 deadline for the filing of all pretrial motions.  A conference was also held on May 4 for the purpose of substituting counsel; the Court reiterated the July 16 deadline at that time, and new counsel agreed to that date.  Reference

was also made to the July 16 deadline at a June 29 conference with the parties.

On July 16, the defendant moved to dismiss the Indictment, but did not move to suppress his post-arrest statements. Indeed, the defendant did not move to suppress the post-arrest statements until October 25, when the motions in limine were filed. Defendant's motion to suppress is therefore untimely.

"A party waives its ability to move to suppress evidence if it fails to do so by the pretrial deadline set by the court, except that the district court may grant relief from that waiver for 'good cause.'" United States v. Kopp, 562 F.3d 141, 143 (2d Cir. 2009) (Per Curiam) (quoting Fed. R. Crim. P. 12(e)). Defendant does not explain why he waited until his motion in limine to make the suppression argument, and the case law is clear that a strategic decision by counsel to delay the pursuit of a suppression claim is insufficient to constitute "good cause." Id.

2.   Merits

Even assuming that the defendant's motion was timely, however, there is no basis for suppression here. Rule 4.2(a) governs a lawyer's communication with persons who are already represented by counsel. It also acknowledges that other bodies

4

of law may authorize communications with represented parties that would otherwise be barred by the Rule.  The Rule provides,

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the <u>lawyer knows to be represented by another lawyer in the matter</u>, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

N.Y. Rule Prof. Conduct 4.2(a) (Emphasis supplied).

As the Third Circuit noted in <u>United States v. Balter</u>, 91 F.3d 427 (3d Cir. 1996), "with the exception of the Second Circuit, every court of appeals that has considered" the issue has held that Rule 4.2(a) does "not apply to pre-indictment criminal investigations by government attorneys.  And even the Second Circuit has held that ordinary pre-indictment investigation[s] . . . fall[] within the 'authorized by law' exception to the Rule absent some independent misconduct by the prosecutors." <u>Id</u>. at 436 (citation omitted).

The Second Circuit has principally discussed Rule 4.2(a) and its predecessor in circumstances that are readily distinguished from that at issue here.  Nonetheless, its teaching has implications for this motion.  In <u>United States v. Jamil</u>, 707 F.2d 638 (2d Cir. 1983), the Second Circuit held that the predecessor to Rule 4.2(a) "may be found to apply in criminal cases . . . to government attorneys . . . [and] to non-attorney government law enforcement officers when they act as

5

the alter ego of government prosecutors." Id. at 645.  In United States v. Hammad, 858 F.2d 834 (2d Cir. 1988), the court declined to hold that the reach of Rule 4.2(a), when applied to government attorneys and other government agents, was co-extensive with the Sixth Amendment, id. at 837; instead, it found that Rule 4.2(a) may apply to the investigatory stages of a criminal proceeding in those circumstances where a government prosecutor "overstep[s] the already broad powers of his office." Id. at 840.  But, it urged "restraint in applying the rule to criminal investigations to avoid handcuffing law enforcement officers in their efforts to develop evidence." Id. at 836. The court further held that "suppression may be ordered in the district court's discretion" for a violation of Rule 4.2(a). Id. at 840.  It expressed confidence that district courts would "exercise their discretion cautiously and with clear cognizance that suppression imposes a barrier between the finder of fact and the discovery of truth." Id. at 842.

The prosecutorial misconduct at issue in Hammad is a far cry from the facts presented here.  The Hammad prosecutor had issued a fake grand jury subpoena for a government informant "to create a pretense that might help the informant elicit admissions from the represented subject." Id. at 840.

The defendant relies principally upon United States v. Foley, 735 F.2d 45 (2d Cir. 1984), which opined that the

Southern District practice of pre-arraignment interviews by AUSAs of uncounseled defendants "raise[d] serious constitutional questions, as well as ethical ones," particularly where the defendant was interviewed "despite a specific request by [soon-to-be appointed] legal aid counsel that the government not question him." Id. at 48.  The court noted that when the Government is aware that a defendant is represented by retained counsel, the AUSAs do not conduct pre-arraignment interviews, rendering the practice one that applied only to the "poor and underrepresented." Id.

While the Foley decision does suggest that the predecessor of Rule 4.2(a) may apply when an attorney who is neither retained nor appointed to represent a defendant, but who has notice that she may be appointed, calls the Government to request that interviewing stop, its discussion was purely dicta. The Foley decision was focused on the practice of the Southern District of New York of allowing prosecutors to conduct pre-arraignment interviews with uncounseled defendants; it had nothing to say about the routine practice of law enforcement officers conducting post-arrest interviews.  It is noteworthy that even in the context of its strong disapproval of the practice by Southern District prosecutors, the court stopped short of holding the AUSA interview to be invalid in the case before it.

7

Rule 4.2(a) applies when the lawyer, here the AUSA, "knows" the defendant "to be represented by another lawyer." At the time Ms. Shroff sent her emails, she did not represent the defendant and the Government did not understand her to represent the defendant. And, given the defendant's wealth, it was entirely reasonable to expect that he would retain counsel, as he has.

But, even if the Government had expected that the defendant would need appointed counsel, Rule 4.2(a) would still not apply. Ms. Shroff had no attorney-client relationship with the defendant. Her email could have theoretically applied to anyone and everyone due to be presented on July 4. She would have had no knowledge of the person for whom she was purporting to act, or, if multiple defendants were to be presented to the court, no knowledge of which of all those persons she might be appointed to represent.

To place this in starker terms, at what point did Ms. Shroff begin to represent the defendant? Is her representation deemed to have begun at the time of the defendant's arrest? No one is suggesting, however, that the expectation of both a presentment and the appointment of counsel at the presentment (in the event the defendant qualifies for appointed counsel, and does not decide to retain counsel or proceed <u>pro se</u>) is sufficient to create an attorney-client relationship between the

just-arrested defendant and an attorney who may or may not be appointed to represent him at the presentment.  Any other rule might have a far-reaching impact not being pressed here -- a bar against all post-arrest interviews by law enforcement officers.

And, if no attorney-client relationship was created between Ms. Shroff and the defendant by the fact of his arrest and the expectation of a presentment, there was no intervening event of any legal significance that occurred prior to the presentment to create that relationship.  Ms. Shroff was not consulted by the defendant following his arrest or retained by the defendant's family to act on his behalf.  Her relationship with the defendant was created when Magistrate Judge Fox appointed her to represent the defendant at the time of his presentment.

Historically, duty Magistrates, AUSAs, and Federal Defenders have assembled at their Foley Square offices on Saturday mornings or holiday mornings to be available to handle any presentments for defendants who may have been arrested overnight.  The fact that, as a matter of courtesy, telephone calls are now made by the U.S. Attorney's Office to relieve the participants of the burden of such travel when no arrests have been made and to advise them that travel will be necessary because an arrest or arrests have been made, has no legal significance here.  After all, if the U.S. Attorney's Office waited to make such courtesy calls until after the arresting

9

officers had finished interviewing an arrested defendant, there would be no ground for any complaint. Thus, because there is no basis to find that the defendant was "represented by" the Federal Defender at the time of the interview, there can be no violation of Rule 4.2(a).

In sum, there exists no basis to apply Rule 4.2(a) to the defendant's post-arrest interview by the FBI. But, even if there was an arguable violation of the Rule, the Court would decline to suppress the statement in an exercise of its discretion.

## Conclusion

For the foregoing reasons, the defendant's October 25, 2010 motion to suppress his post-arrest statements has been denied.

SO ORDERED:

Dated:   New York, New York
         December 14, 2010

```
                                    _____
                                            DENISE COTE
                                    United States District Judge
```

10